FILED

11/09/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0341

DA 20-0341

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 225N

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

SAMUEL RICHARD BONKO,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Big Horn, Cause No. DC 2019-47
Honorable Matthew Wald, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Chad Wright, Appellate Defender, Jeavon C. Lang, Assistant Appellate
Defender, Helena, Montana

       For Appellee:

              Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant
Attorney General, Helena, Montana

              Gerald Ray Harris, Big Horn County Attorney, Randen Schoppe, Deputy
County Attorney, Hardin, Montana

Submitted on Briefs:  August 31, 2022

Decided:  November 9, 2022

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Samuel Richard Bonko appeals his convictions for felony criminal possession of dangerous drugs and misdemeanor resisting arrest. Bonko contends the District Court erred when it: (1) allowed the State to amend its Information; (2) allowed the State to call additional witnesses that had not been previously identified; (3) admitted evidence over Bonko's objection to the chain of custody; and (4) denied Bonko's motion to dismiss for insufficient evidence as to the resisting arrest charge.[1]

¶3 On June 17, 2019, officers from the Big Horn County Sheriff's Office went to a truck stop to investigate a tip that Bonko was there and had an outstanding warrant for his arrest. Deputy Ty Cruikshank arrived first and pulled his patrol vehicle in behind a truck at one of the gas pumps. Deputy Cruikshank approached the person pumping gas at the truck, Clayvin Herrera. Herrera advised Deputy Cruikshank that Bonko was inside the truck. When Deputy Cruikshank knocked on the rear passenger window, Bonko moved from the passenger seat towards the driver's seat and began to struggle with Herrera.

---

[1] At trial, Bonko moved for a directed verdict, which is properly treated as a motion to dismiss for insufficient evidence pursuant to 46-16-403, MCA. *State v. McWilliams*, 2008 MT 59, ¶ 36, 341 Mont 517, 178 P.3d 121.

¶4 During this time, Big Horn County Sheriff's Sergeant Michael Atkinson arrived and parked his patrol vehicle in front of the truck. Bonko then put the truck in reverse and backed up in the direction of Deputy Cruikshank who was now standing outside his vehicle. Bonko then began to drive forward in an attempt to drive around Sergeant Atkinson's vehicle. The truck lurched forward then came to a stop. Sergeant Atkinson observed other passengers inside the truck struggling with Bonko for control of the vehicle until one of the passengers was able to turn off the engine.

¶5 Sergeant Atkinson and Deputy Cruikshank ordered Bonko to exit the truck multiple times. When Bonko did not comply, they struggled to remove him from the truck. Deputy Cruikshank warned Bonko he would tase him if he continued to refuse to comply with their instructions to get out of the truck. Deputy Cruikshank eventually tased Bonko which enabled the officers to remove him from the truck.

¶6 While searching Bonko incident to the arrest, Sergeant Atkinson found, among other items, a bag containing a white crystal substance. The officers placed the seized items on the truck while they completed Bonko's arrest. Deputy Cruikshank then secured the items seized from Bonko and transported Bonko to the jail. Deputy Cruikshank completed a field test of the white substance which tested positive for methamphetamine. Deputy Cruikshank weighed the bag with the substance at 0.39 grams. Deputy Cruikshank then took the bag of white substance and placed it in the evidence locker.

¶7     The State charged Bonko with criminal possession of dangerous drugs and resisting arrest.[2]  The State's Information stated that the alleged offenses took place "on or about June 18, 2019."  However, the State's Motion to File an Information Direct as well as the Affidavit of Probable Cause alleged that the crimes occurred on or about June 21, 2019, which was the date on which the documents were filed.  On the first day of trial, testimony during the State's case-in-chief clarified that the actual date of the alleged offenses was June 17, 2019.  Over Bonko's objection, the District Court allowed the State to amend the Information to change the offense date to June 17, 2019.  In allowing the amendment, the District Court noted that Bonko did not rely on the incorrect offense date for an alibi defense and generally acknowledged his presence when and where the offenses occurred.

¶8     During trial, Bonko objected to the bag containing the white crystal substance and the chain of custody log being introduced into evidence based on improper foundation and chain of custody.  Bonko argued that the State failed to establish chain of custody because the State attempted to establish foundation and chain of custody exclusively through Deputy Cruikshank, who testified that he did not know what happened to the evidence after it was deposited in the evidence locker.  The District Court sustained Bonko's objection but allowed the State to call three additional witnesses: the evidence technician for the Big Horn County Sheriff's Office; the officer who transported the items from the evidence locker to the crime lab; and the forensic scientist who completed the chemical analysis

---

[2] The State also charged Bonko with Criminal Possession of Drug Paraphernalia but conceded Bonko's motion to dismiss that charge at the conclusion of the State's case-in-chief.

report.  Bonko objected to these witnesses on the basis that they had not been identified during discovery.

¶9     The District Court overruled Bonko's objection, explaining that the testimony merely related to establishing chain of custody and Bonko already knew that the contents of the bag were placed in an evidence locker and later tested by a crime lab.  The District Court permitted Bonko an opportunity to interview the witnesses prior to their testimony.  After the witnesses' testimony, the State moved to admit the bag and the chemical analysis report.  Bonko again objected, arguing that the State failed to establish chain of custody because: (1) one of the arresting officers testified that, at some point during the arrest, the bag was briefly placed on the back of the truck; (2) one of the arresting officers testified that the bag looked similar to the bag he pulled out of Bonko's pocket during the arrest; and (3) a bystander could have theoretically tampered with the bag during Bonko's arrest.  The District Court overruled Bonko's objection.

¶10     At the conclusion of the State's case-in-chief, Bonko moved to dismiss the charges for insufficient evidence.  The District Court denied Bonko's motion.  As to the criminal possession of dangerous drugs charge, the District Court reiterated its prior ruling on the chain of custody issue and held the evidence sufficient to sustain the charges.  As to the resisting arrest charge, the District Court held that, when viewing the evidence in the light most favorable to the State, sufficient evidence existed upon which a rational trier of fact could have found beyond a reasonable doubt that Bonko resisted arrest.

¶11     During deliberations, the jury submitted a question, asking in relevant part: "What day of the week was June 17th?"  The parties agreed the District Court should decline to

5

answer.  The jury found Bonko guilty of possession of methamphetamine and resisting arrest.

¶12   "We review a district court's decision to permit an amendment to a criminal complaint or information for an abuse of discretion."  *State v. Hardground*, 2019 MT 14, ¶ 7, 394 Mont. 104, 433 P.3d 711 (internal citation omitted).  We review a district court's ruling regarding the adequacy of the foundation for the admission of evidence for an abuse of discretion.  *State v. McCoy*, 2012 MT 293, ¶ 11, 367 Mont. 357, 291 P.3d 568 (internal citation omitted).  "A district court's ruling to allow testimony of witnesses is reviewed for abuse of discretion."  *State v. Bowen*, 2015 MT 246, ¶ 20, 380 Mont. 433, 356 P.3d 449 (internal citation omitted).  "A district court abuses its discretion when it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice."  *Hardground*, ¶ 7 (internal citation omitted).

¶13   "This Court reviews de novo a district court's conclusion as to whether sufficient evidence exists to support a jury's verdict."  *City of Bozeman v. Howard*, 2021 MT 230, ¶ 10, 405 Mont. 321, 495 P.3d 72 (internal citation omitted).  When doing so, "we view the evidence in the light most favorable to the [State] to determine whether a rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt."  *City of Bozeman*, ¶ 10 (internal citation omitted).

¶14   Bonko contends that the District Court abused its discretion by allowing the State to amend its Information.  Although he concedes the amendment was as to form, he argues that allowing the State to correct the offense date by one day prejudiced his substantive rights because he relied on the date discrepancy in his defense, and "the jury was focused

6

and confused by the date, as indicated by the question to the court during deliberations" as to what day of the week the alleged offenses occurred.

¶15    Section 46-11-205(3), MCA, provides:

> The court may permit an information to be amended as to form at any time before a verdict or finding is issued if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced.

We have previously held that an amendment of the information as to the alleged dates of the offenses was an amendment as to form that did not prejudice the defendant because the same crimes were charged, the elements and proof required did not change, and the defendant was informed of the charges against him. *State v. Yecovenko*, 2004 MT 196, ¶ 32, 322 Mont. 247, 95 P.3d 145.[3]

¶16    As in *Yecovenko*, the amendment to the Information alleged the same crimes, the elements and proof required did not change, and Bonko was informed of the charges against him. Bonko's argument that he was relying on the date discrepancy in his defense might have some merit if it were legal to possess methamphetamine and resist arrest in Big Horn County on Tuesdays but not on Mondays. As it stands, his argument fails. The District Court did not abuse its discretion by allowing the State to amend the Information.

¶17    Bonko claims that the District Court abused its discretion when it allowed the State to call additional witnesses to establish foundation and chain of custody. The District Court carefully considered Bonko's objections to the witnesses and concluded Bonko did not

---

[3] However, when proof of an element of the charged offense, or rebuttal by the defense, "requires evidence of conduct on a specific date or dates," the amendment may be considered one of substance. *Hardground*, ¶ 17.

suffer undue prejudice or surprise because the testimony of the undisclosed witnesses merely related to establishing chain of custody and Bonko already knew that the contents of the bag were placed in an evidence locker and later tested by the crime lab. To mitigate any potential prejudice, the District Court provided Bonko with a reasonable time and opportunity to interview the witnesses prior to their testimony. The District Court did not abuse its discretion in allowing the witnesses' testimony.

¶18 Bonko contends the District Court abused its discretion when it admitted the bag of white crystal powder because the State failed to establish the chain of custody. Bonko argues that the State failed to demonstrate a continuing chain of possession because one of the arresting officers testified that, at some point during the arrest, an officer briefly placed the bag on the back of a truck within both reach and line of sight. Bonko also argues that the State failed to demonstrate that there was no substantial change in the bag because an arresting officer testified that the bag looked similar, and a bystander could have theoretically tampered with the bag.

¶19 To admit evidence, the State must show (1) a continuous chain of possession and (2) no substantial change in the evidence occurred while it was in the State's possession. *McCoy*, ¶ 13 (internal citation omitted). "The State does not need to show that it possessed the evidence at all times . . . ." *State v. Bowser*, 2005 MT 279, ¶ 30, 329 Mont. 218, 123 P.3d 230 (internal citation omitted). The State does not need to show that it would be impossible to tamper with evidence. *McCoy*, ¶ 13 (internal citation omitted). If the State satisfies these two elements, the defendant must "show that the evidence has been tampered with while in the State's custody." *Bowser*, ¶ 30 (internal citation omitted).

8

¶20 The State established through testimony a continuous chain of possession. Deputy Cruikshank testified that he placed the evidence in the evidence locker. The evidence technician testified that the evidence was immediately checked out for transport to the crime lab. The officer who transported the evidence to the crime lab testified regarding transport of the evidence. Finally, the crime lab technician testified that she tested the contents of the bag, which tested positive for methamphetamine. Bonko presented no credible argument of a *substantial* change to the evidence while in the State's possession. The District Court did not abuse its discretion by holding that the State adequately established the evidentiary chain of custody.

¶21 Bonko contends the District Court erred when it denied his motion to dismiss for insufficient evidence as to the resisting arrest charge because he did not use or threaten to use physical force or violence and did not know that he was being arrested.

¶22 Section 45-7-301(1)(a), MCA, provides:

> A person commits the offense of resisting arrest if the person knowingly prevents or attempts to prevent a peace officer from effecting an arrest by:
> (a) using or threatening to use physical force or violence against the peace officer or another.

A person uses physical force against a peace officer when they forcefully resist the officer's effort to restrain them by failing to comply with directions, pulling away from the officer, and making their body rigid and stiff. *State v. Sutton*, 2018 MT 143, ¶ 26, 391 Mont. 485, 419 P.3d 1201.

¶23 Bonko physically resisted the officers' efforts to remove him from the truck to the point where, after being warned, Deputy Cruikshank had to tase Bonko in order to get him

9

out of the truck. Bonko's assertion that there was insufficient evidence for a rational trier of fact to find he knowingly resisted arrest is not credible. As the District Court noted: "[T]he officers were in marked patrol cars, there was a car on each side of the vehicle which Mr. Bonko was in, the officers were in uniform, and clearly making clear directives to [Bonko] to comply." The officers' directives to Bonko to get out of the truck and the ensuing struggle lasted several minutes. Although Bonko claims he was unaware of the warrant that was out for his arrest, he attempted to flee in the truck as soon as Deputy Cruikshank approached. Viewing the evidence in a light most favorable to the State, a rational trier of fact certainly could have found all the essential elements of resisting arrest beyond a reasonable doubt. *City of Bozeman*, ¶ 10. The District Court did not err by denying Bonko's motion to dismiss for insufficient evidence.

¶24 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. Bonko's convictions for felony criminal possession of dangerous drugs and misdemeanor resisting arrest are affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR