ORIGINAL

FILED

12/27/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0059

DA 21-0059

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 254N

STATE OF MONTANA,

       Plaintiff and Appellee,

   v.

THOMAS RICHARD FERRIS,

      Defendant and Appellant.

FILED

DEC 27 2022

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Beaverhead, Cause No. DC-19-3876
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Jack H. Morris, Morris Law Firm, PLLC, Missoula, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

        Jed C. Fitch, Beaverhead County Attorney, Dillon, Montana

                Submitted on Briefs: August 10, 2022

                           Decided: December 27, 2022

Filed:

                            _____
                                 Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Thomas Richard Ferris appeals from the Order Denying his Motion to Dismiss the Amended Information issued by the Fifth Judicial District Court, Beaverhead County. Ferris seeks reversal of his conviction of disorderly conduct in violation of § 45-8-101, MCA. We consider whether the District Court abused its discretion by denying Ferris's Motion to Dismiss the Amended Information, and whether this Court should exercise plain error review of Ferris's contention that the District Court erred by failing to sua sponte provide a specific unanimity jury instruction as to the disorderly conduct charge.

¶3     In April of 2019, the State filed an Information charging Ferris with four counts, including disorderly conduct.[1] The State alleged that Ferris directed profane language at the Chief of the Dillon City Police Department, Don Guiberson, when Chief Guiberson attempted to intervene in a quarrel between Ferris and another man during a basketball game. After the game, Ferris approached Chief Guiberson in the gymnasium and, referring to Chief Guiberson's intervention in the earlier incident, stated: "I didn't do anything illegal." Ferris then stated that Chief Guiberson was "just a fucking badge and a gun."

---

[1] The other charges are not the subject of this appeal.

2

¶4 The State charged Ferris with knowingly disturbing the peace by means of using threatening, profane, or abusive language in violation of § 45-8-101(1)(a)(iii), MCA. In June of 2020, the District Court entered a Scheduling Order. The Scheduling Order set deadlines for filing pretrial motions and noted that the State had indicated at two previous omnibus hearings that it would not be filing any pretrial motions.

¶5 Ferris filed a Motion to Dismiss the disorderly conduct charge, arguing that it violated his constitutional right to free speech. On July 17, 2020, after Ferris filed his motion, but still three months before trial, the State moved to amend the Information. The Amended Information was based on the same facts as alleged in the original Information, and included the same charges, but expanded the alleged bases upon which Ferris knowingly disturbed the peace to include quarreling, challenging to fight, or fighting. The State's motion sought to insert the following emphasized language into the allegations of Count IV:

> Count IV: Disorderly Conduct, a misdemeanor committed in violation of Section 45-8-101, MCA.
> That the Defendant, Thomas Richard Ferris, on or about March 4, 2019, at the University of Montana Western, Dillon, Beaverhead County, Montana, knowingly disturbed the peace by using threatening, profane, or abusive language; *and by quarrelling, challenging to fight, or fighting.* Specifically, the Defendant used profane language directed at Chief Guiberson when he initially intervened in an argument between Ferris and another man, *with whom Ferris had been quarrelling,* in the bleacher section of the gymnasium. Ferris then yelled at Chief Guiberson to "sit the fuck down, people behind you want to see the game." Chief Guiberson told Ferris he was being disorderly and that he needed to stop. Minutes after the game ended, Ferris *angrily* approached Chief Guiberson in an aggressive and belligerent manner *and with fighting words challenged Chief Guiberson by stating, "you just came to fuck with me, I didn't do anything illegal,* you're just a badge and a fucking gun." (Emphasis added.)

3

¶6 The District Court granted the State's Motion to Amend, scheduled another arraignment based on the State's Amended Information, and allowed Ferris to file a supplemental brief in support of his Motion to Dismiss the disorderly conduct charge. In August, the District Court arraigned Ferris on the State's Amended Information. The District Court denied Ferris's Motion to Dismiss.

¶7 The case proceeded to a jury trial. The District Court provided the jury with a general unanimity jury instruction regarding each count against Ferris. Ferris did not object to the instructions or offer a specific unanimity jury instruction. Relevant to this appeal, the jury found Ferris guilty of disorderly conduct.

¶8 "We review a district court's decision to permit an amendment to a criminal complaint or information for an abuse of discretion." *State v. Hardground*, 2019 MT 14, ¶ 7, 394 Mont. 104, 433 P.3d 711 (internal citations omitted). "A district court abuses its discretion when it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice." *Hardground*, ¶ 7 (internal citation omitted). "This Court generally does not address issues raised for the first time on appeal." *State v. Hatfield*, 2018 MT 229, ¶ 15, 392 Mont. 509, 426 P.3d 569 (internal citation omitted). "We discretionally may review unpreserved claims alleging errors implicating a criminal defendant's fundamental rights under the common law plain error doctrine." *State v. George*, 2020 MT 56, ¶ 4, 399 Mont. 173, 459 P.3d 854 (internal citation omitted).

4

¶9 Section 46-11-205(1)-(2), MCA, provides, in relevant part:

> (1) The court may allow an information to be amended in matters of substance at any time, but not less than [five] days before trial, provided that a motion is filed in a timely manner, states the nature of the proposed amendment, and is accompanied by an affidavit stating facts that show the existence of probable cause to support the charge as amended. A copy of the proposed amended information must be included with the motion to amend the information.

> (2) If the court grants leave to amend the information, the defendant must be arraigned on the amended information without unreasonable delay and must be given a reasonable period of time to prepare for trial on the amended information.

"An amendment is one of substance where it alters the nature of the offense, the essential elements of the crime, or the proofs and the defenses required." *Hardground*, ¶ 10.

¶10 While acknowledging that § 46-11-205, MCA, allows for an amendment in matters of substance at any time more than five days before trial, Ferris nevertheless argues that the District Court "violated his due process rights by allowing the State to amend the information after it affirmatively waived its right to file any pre-trial motions." Ferris argues the District Court abused its discretion by "fail[ing] to weigh any prejudice against [him] or apply[ing] the doctrines of waiver and estoppel before granting the State leave to amend the Information."

¶11 Ferris asserts he was prejudiced because the passage of time between the original Information and the Amended Information deprived him of the opportunity to locate witnesses to the incident, including the individual with whom he was quarreling. But as the State argued, and the District Court observed in its order, all of the facts alleged in the Amended Information have existed and been alleged from the very inception of the case.

The Amended Information did not raise new facts unknown to Ferris, nor allege new charges. The amendment merely expanded the bases upon which the disorderly conduct charge was premised.

¶12 As for Ferris's allegations that the State was somehow precluded by waiver or estoppel from amending the Information, the District Court found Ferris's argument to be without merit, observing: "Ferris asserts that he relied on the State's actions when developing a defense theory and litigations strategy. Ferris does not cite any authority to support his suggested proposition that the Omnibus Hearing Orders would supersede the State's ability to amend an information no later than five days before trial under § 46-11-205, MCA."

¶13 On appeal, Ferris again fails to cite any authority to support his argument that the Omnibus Hearing Orders would supersede the State's right, with leave of the court, to amend the Information in accordance with § 46-11-205, MCA. Ferris cites several civil cases and cases from other jurisdictions for the general propositions and elements of waiver and estoppel. But as to either doctrine's ostensible application to the amendment of a criminal information pursuant to § 46-11-205, MCA, Ferris's argument boils down to emphasizing that while the statute "may" allow a substantive amendment more than five days before trial, leave to amend is not automatic. That is precisely what happened in this case—the State moved to amend the Information pursuant to § 46-11-205, MCA, and the District Court exercised its discretion in granting leave in compliance with the statute.

¶14 Ferris next contends that the District Court abused its discretion by denying his Motion to Dismiss because the State's Motion to Amend the Information amounted to

6

vindictive prosecution. Ferris asserts as evidence of the State's vindictiveness, the fact that the Motion to Amend was made after Ferris's Motion to Dismiss and "solely in response to Ferris exercising a constitutional right in his Motion to Dismiss [the disorderly conduct charge] on constitutional protected political speech grounds." Ferris contends that what he construes to be "[t]he appearance of prosecutorial vindictiveness raises the reasonable likelihood that the State was simply utilizing additional acts of disorderly conduct in an effort to deter or punish Ferris from exercising his rights." Ferris relies on *State v. Knowles*, 2010 MT 186, 357 Mont. 272, 239 P.3d 12, in support of his argument. In *Knowles*, we held that there was an appearance of prosecutorial vindictiveness when, after the defendant had exercised his right to a jury trial that resulted in a mistrial, "the State sought quadruple the range of punishment to be imposed on Knowles, *after* he declined to plea to the original charges." *Knowles*, ¶ 35 (emphasis in original). Noting that the State was unable to provide any factual rationale for the increased charges and increased punishment, "the threat of a four-fold increase in punishment has the appearance of prosecutorial vindictiveness, and raises the reasonable likelihood that the State was simply utilizing the increased charges in an effort to deter Knowles from exercising his right to a second jury trial." *Knowles*, ¶ 35. Ferris's reliance on *Knowles* is misplaced.

¶15 Unlike *Knowles*, the State in this case did not seek to increase a charge or a punishment by amending the Information. By amending the Information, the State merely sought to expand the bases upon which the already charged disorderly conduct could be proven. Ferris makes much of the fact that the State sought to amend only after he had moved to dismiss the disorderly conduct charge on free speech grounds, and that the State

7

did not base the amendment on any newly discovered information. But at the pretrial stage of the proceedings, such as in this case, it is not necessarily suggestive of prosecutorial vindictiveness for the prosecutor to "realize that information possessed by the State has a broader significance [since] [a]t this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized." *Knowles*, ¶ 34 (citing *United States v. Goodwin*, 457 U.S. 368, 373-74, 102 S. Ct. 2485, 2489 (1982)). Ferris's Motion to Dismiss may well have precipitated the State's realization that his actions might provide more than one basis for a disorderly conduct charge. But this does not in itself render the amendment vindictive.

¶16 Finally, Ferris claims that the District Court committed plain error when it did not sua sponte provide a specific unanimity jury instruction as to the disorderly conduct charge. Ferris argues that the District Court was required to provide a specific unanimity jury instruction because the State alleged that Ferris committed multiple unlawful acts constituting disorderly conduct.

¶17 "We review an unpreserved claim, under the common law plain error doctrine, at our discretion." *State v. Favel*, 2015 MT 336, ¶ 23, 381 Mont. 472, 362 P.3d 1126 (internal citations omitted). Before this Court will exercise its discretion to find plain error, the party requesting reversal must, among other requirements, "firmly convince this Court that failure to review the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process." *Favel*, ¶ 23 (internal quotation and citation omitted). When the party requesting reversal fails to meet this burden, the

8

circumstances of a case do not warrant application of the plain error doctrine, and we need not address the merits of the alleged error. *State v. Stutzman*, 2017 MT 169, ¶ 23, 388 Mont. 133, 398 P.3d 265.

¶18 Specific to the disorderly conduct charge, the jury was instructed that the offense of disorderly conduct occurs when an individual "knowingly disturbs the peace by[:] quarrelling, challenging to fight, or fighting; or by using threatening, profane, or abusive language." The District Court also instructed the jury:

> Each count charges a distinct offense. You must decide each count separately. The Defendant may be found guilty or not guilty of any or all of the offenses charged. Your finding as to each count must be stated in a separate verdict.
>
> As to each count, the law requires the jury verdict to be unanimous. Thus, all 12 of you must agree in order to reach a verdict on each count whether the verdict be guilty or not guilty.

¶19 Section 45-8-101(1)(a), MCA, sets forth alternative means by which the "disturb[ing] the peace" element of disorderly conduct may be satisfied. In this case, the State alleged two of those alternatives: (1) quarreling, challenging to fight, or fighting, or (2) using threatening, profane, or abusive language. Both alternatives in this case are alleged to have occurred during Ferris's encounters with Chief Guiberson. Alternative means of satisfying the same element of an offense do not require a specific unanimity jury instruction. Ferris has not firmly convinced this Court that the failure to review his claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of Ferris's trial or proceedings, or compromise the integrity of the judicial process. *See State v. Wells*, 2021 MT 103, ¶¶ 20-22, 404 Mont. 105, 485 P.3d 1220

9

(explaining that when the State alleges multiple unlawful acts under a single count, a judge is not required to provide a specific unanimity jury instruction if "the acts are so closely related in time, location, and nature that they form part of the same transaction or course of conduct, rather than completely independent occurrences") (internal citations omitted). Therefore, we need not address the merits of the alleged error and decline to exercise plain error review.

¶20     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's ruling was not an abuse of discretion. Additionally, having reviewed the briefs and the record on appeal, we conclude that Ferris has not met his burden of persuasion. Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justice